IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WENFANG LIU,

                Plaintiff,　　　　　　　　　　OPINION & ORDER

  v.

                                                    12-cv-288-wmc

KITTY RHOADES and ELOISE ANDERSON,

                Defendants.

---

In this case brought under 42 U.S.C. § 1983, plaintiff Wenfang Liu has been granted leave to proceed on claims for declaratory and injunctive relief against the secretaries of the Wisconsin Department of Health Services ("DHS") and Wisconsin Department of Children and Families ("DCF") for incorrectly interpreting the federal Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, and concluding that Liu received an $1,800 overpayment of food stamp benefits.[1]

---

[1] In the December 4, 2013 screening order (dkt. #4), plaintiff was allowed to proceed on her claims because several courts have concluded that there is a private federal cause of action against state officials for compliance with the Food Stamp Act. *See, e.g., Victorian v. Miller*, 813 F.2d 718, 720–21, 724 n.13 (5th Cir. 1987) (holding that plaintiffs have an action under 42 U.S.C. § 1983 to enforce state compliance with the Food Stamp Act); *Haskins v. Stanton*, 794 F.2d 1273, 1274 (7th Cir. 1986) (holding indigent persons denied food stamp benefits had "a private right of action to enforce compliance with the Food Stamp Act by . . . state officials"). Upon closer examination on summary judgment of her principal claim seeking to enjoin the individual state defendants from seeking reimbursement of payments made under a state supplemental benefit, federal jurisdiction is less clear. Although even though the claim appears tied to Liu's eligibility for federal food stamps, the fact that interpretation of federal law is required is not enough by itself to infer jurisdiction. *See, e.g., Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) ("it takes more than a federal element to open the 'arising under' door") (internal quotations omitted); *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005) ("the presence of disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive."). Nevertheless, the court is comfortable exercising jurisdiction over this claim on two independent grounds. First, the court accepted jurisdiction based on the original complaint, which allegedly sought to enforce compliance with the Federal Food Stamp Act, and has invested sufficient time and effort into resolving the closely-related,

Currently before the court are Liu's motions for the court's assistance in recruiting counsel and defendants' motion for summary judgment. Both in answering the complaint and in seeking summary judgment, defendants concede that they erred in determining Liu to be ineligible to receive $1,400 of the $1,800 disputed benefit, so the bulk of Liu's damage claim is now effectively moot. After reviewing the parties' summary judgment submissions, the court further concludes that no reasonable trier of fact could find for Liu on her claim regarding the remaining $400 and will enter judgment in defendants' favor.

MOTIONS FOR RECRUITMENT OF COUNSEL

As a preliminary matter, Liu filed a series of motions asking for court-appointed legal counsel, stating that she cannot afford to hire a lawyer and that she believes that her English is not sufficient to her to litigate the case herself. (Dkt. #8, #11 and #23.) Liu should be aware that civil litigants have no constitutional or statutory right to the appointment of counsel. *E.g., Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). The court may, however, exercise its discretion in determining whether to recruit counsel pro bono to assist an eligible plaintiff who proceeds under the federal *in forma pauperis* statute. *See* 28

---

state law issue that refusal to continue to exercise supplemental jurisdiction would be inefficient. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007) ("The rationale of the supplemental jurisdiction is economy in litigation, and so a relinquishment of it that clearly disserved economy would be a candidate for reversal."). Second, as addressed later in this opinion, Liu also states a separate claim, albeit an ultimately equally unsuccessful one, to enforce a provision of the Immigration and Nationality Act, providing a separate basis for the court's exercise of supplemental jurisdiction over Liu's state law claim, especially given the substantial overlap of fact and law between the claims themselves. *Id*.

U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel"); *Luttrell*, 129 F.3d at 936.

Usually, the first step in making such an inquiry is determining whether the plaintiff has made reasonable efforts to find a lawyer on her own and has been unsuccessful, or that she has been prevented from making such efforts. *Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). Liu has not indicated that she has attempted to contact any outside attorneys, which would be reason enough to deny her motions.

An additional factor weighing against recruiting counsel for Liu is her history with recruited counsel in this court. The court recruited counsel to represent Liu in a case against her ex-husband to enforce the terms of an affidavit of support under the Immigration and Nationality Act ("INA"), *Liu v. Mund*, 09-cv-500-wmc (W.D. Wis.), but ultimately allowed counsel to withdraw after Liu made it clear that she no longer wished to be represented. There is little reason to think that Liu would get along better with any new counsel the court might recruit for this case.

Even if Liu made appropriate attempts to locate outside counsel and had no history of firing court-recruited counsel, the court would deny her motions because she does not meet the final step of the analysis: determining "whether the difficulty of the case -- factually and legally -- exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury [her]self." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). A court may consider any or all of the following five factors when making this determination: (1) the merits of the claim for relief; (2) the ability of

3

plaintiff to investigate crucial facts unaided; (3) whether the nature of the evidence indicates the truth will more likely be exposed when both sides have counsel; (4) the indigent person's capability to present the case; and (5) the complexity of the legal issues involved. *Jackson*, 953 F.2d at 1072.

As the opinion below explains in detail, this case is not a particularly complicated one. Rather, it involves the application of statutes and regulations to undisputed facts regarding Liu's various qualifications for food stamp eligibility and the question of who is responsible for reimbursement of an overpayment of benefits. Moreover, although Liu's English is not perfect and her filings can be somewhat unfocused, the nature of her argument is straightforward enough. This court has also had sufficient interaction with Ms. Liu over the course of multiple lawsuits to conclude that she is very bright, determined to a fault and fully capable of insuring that her claims are understood, both factually and legally. In this case, the problem for Liu is that she misstates some key points about the Food Stamp Act, leading her to incorrectly conclude that she is entitled to relief from the state's collection efforts with respect to the remaining $400 in dispute. Recruiting counsel would not materially alter this analysis.

## MOTION FOR SUMMARY JUDGMENT

### I. Undisputed Facts[2]

---

[2] In her opposition brief, Liu lists eight additional state or county officials who allegedly responded to her complaints of "dishonest, unjust and poor service" by seeking reimbursement of the $1,800, refusing to take her calls and threatening her with claims of harassment. She further "wants these government employees" to be "properly punished for their unjust behavior." (Dkt. #24, at 2.) While Liu does not formally request to amend her complaint, it would be denied in any event given her failure to state a colorable claim under Fed R. Civ. P. 8. Moreover, it is too late for Liu to amend her complaint to change radically the nature of this action under Fed. R.

4

Plaintiff Wenfang Liu is a Chinese national with permanent resident status in the United States. She legally entered this country in October 2007 and, at all times material to this lawsuit, has resided in Wisconsin. Defendant Kitty Rhoades is the secretary of the Wisconsin Department of Health Services ("DHS"). Defendant Eloise Anderson is the secretary of the Wisconsin Department of Children and Families ("DCF").

At the time Liu entered the United States, she was over the age of 18. Shortly after arriving to the United States, Liu was divorced from her husband and sponsor, Timothy John Mund. Mund must still comply with his I–864 affidavit of support, under which he agreed to support Liu at 125 percent of the poverty level unless she has earned sufficient income to do so herself. At all times material to the complaint, Liu has remained unemployed and has no other source of income.

For approximately two years prior to August 2011, Liu received "FoodShare" benefits from the State of Wisconsin. This program is governed by the federal Supplemental Nutrition Assistance Program and attendant regulations, which was formerly called and is still colloquially known as the "food stamp" program. During the time Liu received FoodShare, federal law restricted the federal food stamp eligibility of aliens with permanent status in the United States to persons who were both "qualified" and "eligible" as those terms were defined by federal regulations. 7 C.F.R. § 273.4(a)(6)(i)-(iii). Providing something of a "safety net" during this same time, Wisconsin law expressly allowed the issuance of FoodShare benefits to qualified aliens

---

Civ. P. 15.

who were ineligible for food stamp benefits under federal law.[3] In June 2011, however, the Wisconsin Legislature amended Wis. Stat. § 49.79(8) to read that DHS "shall *not* provide [FoodShare] benefits under this section to a qualified alien, except to the extent that federal food stamp benefits for qualified aliens are required by the federal government." Wis. Stat. § 49.79(8) (2013-14) (emphasis added); 2011 Wis. Act 32 § 1534.

On July 11, 2011, the DHS Enrollment Services Center notified Liu that her "[FoodShare] benefits will be ending on Aug. 01, 2011" in part because she was "not a U.S. citizen or an immigrant who is able to get this benefit." (Dkt. #20, Exh. 1, at 1-2.) The notice informed Liu that she had the right to a "fair hearing" about her benefits if requested by October 31, 2011. (*Id*. at 4.) The notice further stated that:

> [I]f you are already getting benefits and if you ask for a hearing before your benefits change, you can keep getting the same benefits until the hearing officer makes a decision. If the hearing officer decides that the agency was right, you may need to return the extra benefits that you got after your benefits were supposed to change.

(*Id*.)

Liu filed a timely petition with the Wisconsin Department of Administration

---

[3] Wisconsin law during the period Liu received FoodShare benefits read as follows:

> Benefits for qualified aliens. The department shall provide benefits under this section to a qualified alien who is ineligible for benefits under this section solely because of the application of 9 USC 1612 or 1613 according to a plan approved by the federal department of agriculture. This subsection does not apply to the extent that federal food stamp benefits for qualified aliens are restored by the federal government.

Wis. Stat. § 49.79(8) (2009-10). According to one of the ALJ decisions in this case, the state of Wisconsin was during this timeframe "funding an expansion of the [FoodShare] program for legal aliens who [had not been in the United States for five years.]" (Dkt. #19, Exh. 2, at 1.)

Division of Hearings and Appeals ("DHA") on July 21, 2011, under Wisconsin's fair hearing provision, Wis. Admin. Code § HA 3.03, to review the cancellation of her benefits. A hearing on Liu's petition was held August 24, 2011, before Administrative Law Judge ("ALJ") Nancy J. Gagnon. Liu appeared at that hearing.

On September 19, 2011, ALJ Gagnon issued a decision upholding DHS's determination that Liu was no longer eligible for FoodShare benefits because of the change in state law. In particular, the ALJ stated that Liu failed to meet the definition of "eligible alien" under the federal regulations, highlighting the provisions showing that Liu, as an alien over the age of 18 "lawfully admitted for permanent residence under the INA," would be eligible only after five years in the United States, 7 C.F.R. § 273.4(a)(6)(iii)(A), unless she met one of several criteria listed in § 273.4(a)(6)(ii)(A)-(J).[4] (Dkt. #19, Exh. 1, at 2-3.) The ALJ concluded that none of those criteria applied

---

[4] Those criteria are:

> (A) An alien age 18 or older lawfully admitted for permanent residence under the INA who has 40 qualifying quarters as determined under Title II of the SSA including qualifying quarters of work not covered by Title II of the SSA, based on the sum of: quarters the alien worked; quarters credited from the work of a parent of the alien before the alien became 18 (including quarters worked before the alien was born or adopted); and quarters credited from the work of a spouse of the alien during their marriage if they are still married or the spouse is deceased. . . .
> (B) An alien admitted as a refugee under section 207 of the INA;
> (C) An alien granted asylum under section 208 of the INA;
> (D) An alien whose deportation is withheld under section 243(h) of the INA as in effect prior to April 1, 1997, or whose removal is withheld under section 241(b)(3) or the INA;
> (E) An alien granted status as a Cuban or Haitian entrant (as defined in section 501(e) of the Refugee Education Assistance Act of 1980);
> (F) An Amerasian admitted pursuant to section 584 of Public Law 100-202, as amended by Public Law 100-461;
> (G) An alien with one of [several] military connections . . . .
> (H) An individual who is receiving benefits or assistance for blindness or disability

to Liu. *Id*. at 3. In particular, the ALJ noted Liu's age, unemployed status, her lack of military experience and that she was not disabled.

On September 23, 2011, Liu filed a request for rehearing with DHA, which was denied. In considering that request, ALJ Gagnon addressed Liu's assertion that she was battered by her ex-husband while they were still married in the United States. The ALJ concluded that this did not constitute new evidence warranting a rehearing, because Liu could have addressed the alleged abuse during the original hearing and the rehearing request did not include police or medical reports to corroborate her allegation of abuse. (Liu claims she did raise the abuse issue in the original hearing.) As had the original decision, the decision denying rehearing again advised Liu how to appeal her decisions to the Dane County Circuit Court. Liu continued to receive FoodShare benefits during the pendency of her administrative appeal through October 2011, but did not seek state-court review from either the September 19 or October 7 decisions.

On November 23, 2011, DHS sent two letters to Liu. The first stated that FoodShare benefits had been overissued to her for the period between January 1 and July 31, 2011, in the amount of $1,400. The second stated that FoodShare benefits had been overissued to her for the period between September 2 through October 31, 2011, in the amount of $400.[5] Both letters informed her that she had the right to request a fair

---

    . . . .
    (I) An individual who on August 22, 1996, was lawfully residing in the U.S., and
    was born on or before August 22, 1931; or
    (J) An individual who is under 18 years of age.

7 C.F.R. § 273.4(a)(6)(ii)(A)-(J).
[5] The parties do not explain whether Liu was issued benefits for the month of August 2011, but

hearing. Liu did not request a hearing with respect to either notice.

On February 2, 2012, the DCF Public Assistance Collection Unit ("PACU") sent Liu a letter demanding that she pay the total $1,800 owed or sign a repayment agreement. On April 13, 2012, PACU sent Liu a letter stating that the debt might be satisfied through an intercept of Liu's state tax refund or state tax credits. The letter also stated that Liu had the right to an administrative hearing to contest the debt. Again, Liu chose not to do so.

After Liu initiated the current lawsuit, defendants admitted in their answer that they had erred in claiming an overissue of benefits in the amount of $1,400 for the period from January to July 2011. On January 17, 2014, DCF also sent Liu a letter rescinding that claim.

## II. Opinion

The purpose of summary judgment is to determine "whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable substantive law dictates which

---

she does not raise claims for relief regarding that month and there is no indication in the record that the state pursued reimbursement of a payment for that period, so any such payment is outside the purview of this case.

facts are material. *Anderson*, 477 U.S. at 248; *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could resolve it either way. *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must view all facts in favor of Liu, as the non-moving party, drawing all reasonable inferences in her favor. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). Even so, as plaintiff, Liu may not simply rest on the allegations in her complaint; rather, she "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires a trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 324). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted)).

Liu maintains that she owes the state of Wisconsin nothing with regard to any food stamp benefit received and wants DCF and DHS to revoke the notice stating that she owes $1,800 for excess food-stamp payments. Liu largely prevailed on her claim when: (1) defendants admitted in their answer that Liu does not owe $1,400 of the amount at issue for payments made to Liu between January and July 2011; and (2) the request for reimbursement of that amount was formally rescinded. Accordingly, Liu's claim regarding this part of her claim is now moot.

As for the remaining $400 sum defendants still claim is subject to reimbursement for the period from September through October 2011, two issues remain: (1) whether Liu was eligible for FoodShare benefits during this time period; and (2) even if ineligible, whether the state properly sought reimbursement from Liu as opposed to seeking reimbursement from her ex-husband/sponsor. The court addresses each issue below.

### A. Eligibility

Defendants argue that the question of Liu's eligibility is resolved on issue preclusion grounds having been previously litigated through the state administrative process. Alternatively, they argue that the administrative law judge's decision on eligibility was correct. After considering the parties' submissions and relevant legal authority, the court concludes that defendants are correct on both counts.

#### 1. Preclusion

Defendants persuasively argue that issue preclusion should prevent Liu from arguing that she was eligible for food stamp benefits following the August 1, 2011, change in state law limiting benefits to those qualified aliens required to be covered under federal law. "[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate,' . . . federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422 (1966)). *See also E. Food & Liquor, Inc. v. United States*, 50 F.3d 1405, 1410-13 (7th Cir.

11

1995) (applying administrative issue preclusion to state agency findings in a food stamp case).

For cases such as this, where no state court was given an opportunity to review the administrative decision, the Wisconsin Supreme Court advised that:

> [C]ourts must first determine a) whether the agency was adjudicating a disputed issue of fact properly before it and b) whether the agency's proceedings provided the parties an adequate opportunity to litigate.  Only if both of these conditions are satisfied can the court advance to the second stage of analysis, that being whether under state law, do the agency's findings have preclusive effect.

*Lindas v. Cady*, 183 Wis. 2d 547, 554, 515 N.W.2d 458, 461 (1994).

### a. Proper and adequate opportunity to litigate issue before agency

Liu does not attempt to dispute that her eligibility for FoodShare benefits was properly before the ALJ.  Nor is there any indication in the record that she was denied an adequate opportunity to litigate her eligibility at an evidentiary hearing before an ALJ under the state's "fair hearing" process, a system that provides fundamental due process protections to litigants both on its face and in practice here.  *See Lindas*, 183 Wis. 2d 547, 555-57, 515 N.W.2d 458, 462 (noting that "adequate opportunity" is defined by "minimum procedural requirements of the Fourteenth Amendment's Due Process Clause" mirroring elements of Restatement (Second) of Judgments § 83 (1982) such as "'[a]dequate notice to persons . . . bound by the adjudication'"; "'[t]he right . . . to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties'"; and "'[a] formulation of issues of law and fact in terms of the application of rules with respect to specified

parties concerning a specific transaction, situation, or statutes'"; Wis. Admin. Code § HA 3.06 (provision detailing notice given to petitioner and right of petitioner to call witnesses and submit and challenge evidence).

### b. Preclusive effect

As for the agency's findings having preclusive effect, the Wisconsin Supreme Court again calls for a two-part test. The first test requires that "the question of fact or law that is sought to be precluded actually must have been litigated in a previous action and [have been] necessary to the judgment." *Mrozek v. Intra Financial Corp.*, 2005 WI 73, ¶ 17, 281 Wis. 2d 448, 699 N.W.2d 54. If the issue has actually been litigated, the second test requires that it be "fundamentally fair to employ issue preclusion given the circumstances of the particular case at hand." *Id*.

As for the first test, Liu is at least in part trying to relitigate the issue of her eligibility for FoodShare benefits previously litigated in state administrative proceedings. As for the second, applying issue preclusion in this case comports with the "fundamental fairness" analysis articulated by Wisconsin courts:

> In *Michelle T.*, we noted a series of factors which courts have deemed significant to protect the rights of parties to a full and fair adjudication of the issues. Those factors include the following:
>
> > (1) could the party against whom preclusion is sought, as a matter of law, have obtained judicial review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant litigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public

13

> policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Lindas*, 183 Wis. 2d at 561 (citations omitted) (quoting *Michelle T. v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327, 330-31 (1993)).

None of those factors suggest that it would be unfair to preclude Liu from relitigating her eligibility in this court. At the outset, Liu passed up the chance to litigate her eligibility in state court, which cuts against a finding of unfairness. *Lindas*, 183 Wis. 2d at 561. There has been no "intervening contextual shift" in the federal or state food stamp law. By concluding that the administrative hearing procedures provided an "adequate opportunity," this court has already concluded that the hearing satisfies the "quality or extensiveness" factor. *See id*. at 561 ("we believe [the quality or extensiveness] analysis is for all intents and purposes equivalent to *Elliott's* 'adequate opportunity to litigate' requirement"). Additionally, Liu's burden has not shifted; in either the administrative proceedings or this action, she must prove her eligibility by a preponderance of the evidence. *See* Wis. Admin. Code § HA 3.09(4). Finally, this court cannot conceive of a public policy reason or individual circumstance making the application of issue preclusion unfair.

The justification usually given in this type of case -- that the party opposing issue preclusion had an "inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action," *Lindas*, 183 Wis. 2d at 561 -- is certainly not applicable here. If anything, Liu had far more incentive to fully present her case at the

eligibility hearing, where her *ongoing* benefits were being contested, as opposed to merely the several–month stretch of benefits amounting to $400 that remains at issue in the present case. Because there is no fundamental unfairness in applying issue preclusion to the state administrative hearing, the court concludes that issue preclusion should apply to that decision: Liu's eligibility for FoodShare benefits ended on August 1, 2011.

### 2. The ALJ's Underlying Decision was Correct

In any case, defendants argue in the alternative that regardless of the issue preclusion analysis, the ALJ correctly concluded that Liu was ineligible for FoodShare benefits.[6] Neither side presents a transcript or recording of the hearing. However, at this point of the proceedings, it remains Liu's burden to present evidence showing that she was eligible for FoodShare benefits, which she wholly fails to do. Indeed, Liu fails to dispute *any* of the proposed findings of fact set forth by defendants or any of the findings in the ALJ's September 19, 2011, decision. Based on those facts -- Liu is over 18, arrived in the United States from Hong Kong in 2007, has remained unemployed, has no military experience and is not disabled -- Liu simply fails to meet any of the qualifications for an "eligible" alien with fewer than five years in the United States. *See* 7 C.F.R. § 273.4(a)(6)(ii)(A)-(J); *supra* n.4.

The only factual issue Liu does raise is the one raised in her motion for a rehearing before the ALJ -- that she was physically abused by her ex-husband/sponsor. However, even assuming for purposes of the summary judgment motion that Liu was in fact "[a]n

---

[6] Neither party suggests a standard of review of the ALJ's decision regarding Liu's eligibility. Even assuming *de novo* review of this decision, however, the court concludes that the state's application of federal and state food stamp law was correct, at least with respect to the $400 still in dispute.

alien who has been battered or subjected to extreme cruelty in the U.S. by a spouse" within the meaning of the regulations, that status does not make her an "eligible" alien with fewer than five years in the United States.  Rather, it is one of the ways a person may be a "qualified" alien.  *Compare* 7 C.F.R. § 273.4(a)(6)(**i**)(G) *with* 7 C.F.R. § 273.4(a)(6)(**ii**)(A)-(J) (emphasis added).  Indeed, the regulations somewhat inexplicably emphasize that a qualified alien who has been battered is still subject to the five-year rule before receiving benefits.  7 C.F.R. § 273.4(a)(6)(iii)(C); *see also Liu v. Dep't. of Health Serv's*, 11-cv-712-wmc (W.D. Wis. Dec. 20, 2011) (similar complaint filed by Liu dismissed in part because status as battered alien is insufficient to establish right to food stamps).  Because Liu had not been in the United States for five years, her status as a battered spouse did not entitle her to benefits.

### B.     Reimbursement

As previously noted, Liu also raises a legal issue that arguably fell outside of the scope of the ALJ hearing; she argues that her ex-husband/sponsor, Timothy John Mund, should be forced to reimburse the state the $400 in question, rather than Liu.  Citing the sponsorship provision of the Immigration and Nationality Act, 8 U.S.C. § 1183a(b)(1)(A), Liu argues that the overissuance must be paid off by Mund.  That provision states as follows:

> "Upon notification that a sponsored alien has received any means-tested public benefit, the appropriate nongovernmental entity which provided such benefit or the appropriate entity of the Federal Government, a State, or any political subdivision of a State shall request reimbursement by the sponsor in an amount which is equal to the unreimbursed costs of such benefit."

In contrast, defendants argue that Liu has the primary responsibility to reimburse the overissuance. The state seizes on the word "unreimbursed" in § 1183a(b)(1)(A) to argue that the sponsor's liability is limited to funds that have not already been paid off by the alien.

Both parties are arguably stretching for a specific result from a broad statute meant to avoid receipt of a means-tested public benefit by an alien admitted by sponsorship. *See* 8 U.S.C. § 1182(a)(4)(A) (denying entry of immigrants who are "likely at any time to become a public charge"). Accordingly, § 1183a(b)(1)(A) provides the basis for a state to attempt to recoup even correctly-assessed public benefits given to a sponsored alien, so that the sponsor, not the government, incurs the cost of supporting the alien's basic needs, when the alien lacks the means to do so herself. *See* § 1183a(a)(1) (affidavit of support must be "legally enforceable against the sponsor by the sponsored alien, the Federal Government, any State (or any political subdivision of such State), or by any other entity that provides any means-tested public benefit").

Even so, § 1183a is not a statute specifically geared toward recovery of *overpayment* of benefits. The portion of the Food Stamp act that specifically discusses overpayments states, "Each adult member of a household shall be jointly and severally liable for the value of any overissuance of benefits." 7 U.S.C. § 2022(a)(4). At the time Liu received overpayments, she was the sole member of her household (having been previously divorced from Mund). An even more specific regulation, 7 C.F.R. § 273.18(a)(4) ("Claims against households"), limits responsibility to "[e]ach person who was an adult member of the household when the overpayment or trafficking occurred; [or a] person

17

connected to the household, such as an authorized representative, who actually trafficks or otherwise causes an overpayment or trafficking."

In contrast, a previous version of this regulation explicitly stated that both the alien and the sponsor could be held liable for an overpayment where the sponsor was at fault for the overpayment:

> (4) The following are responsible for paying a claim:
> (i) Each person who was an adult member of the household when the overpayment or trafficking occurred;
> (ii) *A sponsor of an alien household member if the sponsor is at fault*; or
> (iii) A person connected to the household, such as an authorized representative, who actually trafficks or otherwise causes an overpayment or trafficking.

§ 273.18(a)(4) (effective to January 13, 2011) (emphasis added).[7]

This section was amended to *remove* subparagraph (ii) to "eliminat[e] the sponsor's liability for overpayments of the alien household's benefits." Supplemental Nutrition Assistance Program (SNAP): Clarifications and Corrections to Recipient Claim Establishment and Collection Standards, 75 Fed. Reg. 78151, 78153 (Dec. 15, 2010). Thus, under the version in place at the time of the overissuance to Liu, she was liable for the overpayment as the only "adult member of the household when the overpayment occurred." Specific statutes control over general ones, *see, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992), and this court gives deference to the Department of Agriculture's interpretation of the Food Stamp Act, *see Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).

---

[7] Even if that version of the regulation were enforced, Mund was obviously not at fault for the overpayment of benefits at issue; rather, it was Liu who directly incurred the $400 overpayment by mistakenly claiming eligibility.

18

Regardless, § 1183a(b)(1)(A) would seem at most to give discretion to the State of Wisconsin regarding from whom it wishes to seek reimbursement in the first instance. Moreover, a federal court has no obvious authority to enjoin the state from seeking reimbursement from an unauthorized direct beneficiary *first*, even though a state might be required to seek reimbursement from a sponsor if those efforts prove unavailing.[8]

For all these reasons, defendant's motion for summary judgment against Liu's claims for declaratory and injunctive relief regarding the remaining $400 overpayment will be granted.

ORDER

IT IS ORDERED that:

(1) plaintiff Wenfang Liu's motions for recruitment of counsel (dkt. #8, #11 and #23) are DENIED;

(2) defendants' motion for summary judgment (dkt. #16) is GRANTED; and

(3) the clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 10th day of February, 2015.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

---

[8] In the even the state were ultimately to decide not to pursue Mund for this unreimbursed amount, Liu would have no apparent standing to force it to do so, especially as the party whose default would trigger any obligation by the state to do so pursuant to § 1183a(b)(1)(A).